**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HALEH RAMIAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:26-cv-04424-JDW** |
| | : | |
| **AMERICAN ASSOCIATION FOR** | : | |
| **CANCER RESEARCH,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

Haleh Ramian asserts claims gender, pregnancy, and disability discrimination and retaliation claims against her former employer the American Association for Cancer Research ("AACR") arising from her termination. I will grant her leave to proceed *in forma pauperis* and permit her to claims for gender discrimination and disability-based retaliation to proceed. I will dismiss her other claims and give her leave to file an amended complaint.

## I. FACTUAL ALLEGATIONS

I glean the factual allegations from Ms. Ramian's Charge Of Discrimination before the EEOC. AACR hired Ms. Ramian in August 2023 as a Cancer Epidemiology Research Analyst, working remotely from Pittsburgh, Pennsylvania, then later Melbourne, Florida. Upon being hired, Ms. Ramian agreed to relocate to Philadelphia but had difficulty securing childcare. After her lease in Pittsburgh expired, Ms. Ramian moved to Florida, where she could stay with friends and family. Ms. Ramian informed her manager, Rajarshi

Sengupa, about her move to Florida and stated it would be temporary. AACR did not set a timeline for her to relocate. AACR required proof of a COVID vaccination, which Ms. Ramian provided. On an unspecified date, Ms. Ramian secured a spot in a Philadelphia daycare and informed her managers that she would relocate in August 2024.

In May 2024, Ms. Ramian experienced unspecified pregnancy-related complications, which required surgery. In early June, Ms. Ramian informed several AACR staff, including Mr. Sengupta and AACR's co-director, of her medical problems and that she would need to undergo surgery. Around this time, Ms. Ramian also traveled to AACR's office in Philadelphia and attended an in-person group meeting as well as a meeting with AACR's CEO. About one week before the surgery, Ms. Ramian informed Mr. Sengupta that she would be having the surgery and needed ten days to recover. Mr. Sengupta approved Ms. Ramian's requested leave in the AACR computer system. (Puzzlingly, Ms. Ramian also alleges that she requested the time off on June 13, 2024, the day before her surgery, and that she did not get a response.)

Ms. Ramian's surgery occurred on June 14, 2024. On June 17, 2024, Ms. Ramian provided a doctor's note to Mr. Sengupta and HR representative Stephen Ziobro, describing her need for leave until June 24, 2024. The same day, Mr. Ziobro called Ms. Ramian and encouraged her to resign. Ms. Ramian sent Mr. Ziobro her doctor's note and explained that she was on leave. She refused to resign. AACR terminated her effective June 21, 2024. AACR stated its reason for terminating her was that she was taking too

long to relocate to Philadelphia. AACR later stated in unemployment proceedings that Ms. Ramian was fired for not relocating and for failing to get Covid booster shots. Ms. Ramian contends that AACR never gave her a deadline either to receive booster shots or to relocate.

Ms. Ramian asserts claims of wrongful termination, failure to accommodate her disability, retaliation, and pregnancy- and disability-based discrimination.

## II. STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that she is unable to pay for the costs of her suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, it must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Pursuant to that standard, I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*,, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

### A. *In Forma Pauperis*

Ms. Raiman has completed the required forms and attests under penalty of perjury that she lacks the income and assets to pay the required filing fees in this case. I will therefore grant her leave to proceed without paying those fees.

### B. Plausibility Of Claims

#### 1. Title VII

##### a. Employment discrimination

Ms. Ramian asserts claims of pregnancy-based discrimination[1] and wrongful termination under Title VII. To state a claim for employment discrimination under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that her membership in a protected class was "either a 'motivating' or 'determinative' factor" in her employer's adverse employment action. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). A plaintiff alleging a Title VII claim for discriminatory discharge may do so by alleging that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) the employment action suggests an inference of discrimination because of her membership in the protected class, such as might occur

[1] Pregnancy-based discrimination is a variant of gender-based discrimination. *See Konate v. Actalent, Inc.*, No. 23-4210, 2025 WL 289212, at *3 (D.N.J. Jan. 24, 2025). Title VII specifically defines discrimination "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k).

when the position is filled by a person not of the protected class. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996). A pregnancy discrimination claim requires an allegation that the employer knew of the employee's pregnancy. *See May v. PNC Bank*, 434 F. Supp. 3d 284, 294 (E.D. Pa. 2020).

The timing of Ms. Ramian's termination, coming four days after she told AACR that she needed time off to recover from a pregnancy-related complication, satisfy the pleading standard. AACR knew about her pregnancy, and the temporal proximinty between her need for care and her termination give rise to an inference of a causal connection. *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp.3d 663, 666 (E.D. Pa. 2016). This claim can therefore proceed.

**b. Retaliation**

For a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789. Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Not every complaint about employment entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). "Rather, only complaints about discrimination

prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 2003 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)). "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). "General complaints of unfair treatment will not suffice." *Id.* (citing *Barber*, 68 F.3d at 702).

Read liberally, Ms. Ramian's retaliation claim rests on the theory that she was terminated for requesting pregnancy-related accommodations. Title VII states that, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Ms. Ramian does not allege that she opposed any practice that Title VII prohibits. Courts in this Circuit have frequently rejected the idea that requesting pregnancy-related accommodations constitutes protected activity. *See, e.g.*, *McCormick v. Allegheny Valley Sch.*, No. 06-3332, 2008 WL 355617, at * 17 (E.D. Pa. Feb. 6, 2008); *Donnelly v. Cap. Vision Servs., LLC*, 644 F. Supp.3d 97, 111 (E.D. Pa. 2022). In *McCormick*, Judge Pratter explained that a "simple request for maternity leave cannot satisfy the first prong of the test [for retaliation] because it involves *no* protest (formal or informal) of an unlawful practice." *McCormick*, 2008 WL 355617, * 17

(emphasis in original). That analysis tracks the language of Title VII's anti-retaliation provision, and I find it persuasive. Because Ms. Ramian did not engage in protected activity, I will dismiss her retaliation claim. However, I will give her leave to amend if she can allege additional facts to establish that she engaged in protected activity.

**2. ADA**

**a. Employment discrimination and failure to accommodate**

Ms. Ramian appears to allege discrimination under the ADA based on wrongful termination and the failure to accommodate her disability. To state a claim for employment discrimination under the ADA, a plaintiff must allege that she has a disability within the meaning of the ADA, she was "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer" and she "suffered an otherwise adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020). The discrimination element encompasses claims that an employer failed to make reasonable accommodations for the plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To state a plausible failure to accommodate claim under the ADA, a plaintiff must allege: "(1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated." *Armstrong v. Burdette*

*Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citation modified); *Taylor*, 184 F.3d at 319-20.

Individuals are disabled within the meaning of the ADA if they: (1) have '"a physical or mental impairment that substantially limits one or more' of their 'major life activities'; (2) have 'a record of such an impairment'; or (3) are 'regarded as having such an impairment.'" *Morgan*, 2024 WL 4033125 at *3 (quoting 42 U.S.C. § 12102(1)). Major life activities include, among other things, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working, and impairment of the operation of a major bodily function. § 12102(2)(A), (B).

Ms. Ramian has not plausibly pled the elements of an ADA discrimination or failure to accommodate claim. She does not plead that she has a disability under the ADA. Read liberally, Ms. Ramian asserts that her pregnancy-related medical complications were a disability under the ADA and that she was terminated because of her disability. Pregnancy-related complications can, in certain circumstances, constitute a disability under the ADA. *See Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344-45 (M.D. Pa. 2015). However, Ms. Ramian provides no information regarding the nature of her disability to allege a plausible disability under the ADA. *See Oliver v. Scranton Materials, Inc.,* No. 14–0549, 2015 WL 1003981, at *8 (M.D. Pa. Mar. 5, 2015). Without allegations that Ms. Ramian had a disability under the ADA, her employment discrimination and failure to

accommodate claims are not plausible. However, I will grant Ms. Ramian leave to amend if she can allege additional facts to cure the deficiencies that I have identified.

**b. Retaliation**

The ADA's anti-retaliation provision states in relevant part that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]" and that it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(a) and (b). To plausibly allege an ADA retaliation claim, "[a] plaintiff may establish a causal link with unusually suggestive temporal proximity, a pattern of antagonism coupled with timing, or from inferences gleaned from the record as a whole." *Williams v. Scranton Counseling Ctr.*, No. 25-1563, 2026 WL 2447146, at *6 (M.D. Pa. Aug. 20, 2026) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Read liberally, Ms. Ramian alleges that she suffered retaliation for requesting a 10 days of medical leave as an accommodation for her disability. Requesting a reasonable accommodation constitutes protected activity for purposes of an ADA retaliation claim. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). While Ms. Ramian has not alleged a disability under the ADA, "unlike a general ADA discrimination claim, an

ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff ha[d] a reasonable, good faith belief that he was entitled to request the reasonable accommodation he requested." *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 680 (E.D. Pa. 2021) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)). Accepting all inferences in Ms. Ramian's favor, she plausibly alleges that she believed in good faith that she was entitled to request 10 days' leave to recover from her surgery. She also plausibly alleges a causal connection between her request for leave and her termination, considering the unusually suggestive temporal proximity between the two events. Thus, Ms. Ramian's ADA retaliation claim can proceed.

## IV. CONCLUSION

I will grant Ms. Ramian leave to proceed *in forma pauperis* and dismiss her Complaint in part for failure to state a claim, pursuant to 28 U.S.C. 1915(e)(2)(B)(ii). I will dismiss the Title VII retaliation claim and the ADA discrimination and failure to accommodate claims. I will permit her to proceed with her Title VII gender discrimination and her ADA retaliation claims. I will permit Ms. Ramian to file an amended complaint if she can cure the deficiencies that I have explained in this Memorandum. In the alternative,

Ms. Ramian may advise me that she seeks to proceed only with her Title VII gender discrimination and ADA retaliation claims.[2] An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

October 22, 2026

[2] I will deny Ms. Ramian's Motion for Appointment of Counsel without prejudice. The Motion she filed is blank and consists of the Court's form for *pro se* litigants to request appointment of counsel. She does not set forth any facts to justify appointment of counsel. She may renew her request after I have determined whether she intends to proceed on her initial Complaint or an amended pleading.